MJC/SM2012R0032

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. ELH-12-0595 |
| v. | |
| MANOJ KUMAR JHA, | (Wire Fraud, 18 U.S.C. § 1343; Mail Fraud, 18 U.S.C. § 1341; Falsification of Records, 18 U.S.C. § 1519; |
| Defendant. | Forfeiture, 18 U.S.C. § 982(a)(2)(A)) |

...oOo...

## INDICTMENT

## COUNTS ONE THROUGH FIVE

(Wire Fraud)

The Grand Jury for the District of Maryland charges that:

### Introduction

1. At all times relevant to this Indictment, **MANOJ KUMAR JHA ("JHA")** was a resident of Maryland and a full time professor at Morgan State University in Baltimore, Maryland.

2. At all times relevant to this Indictment, Amar Transportation Research & Consulting, Inc. ("ATRC") was a company incorporated in the State of Maryland. **JHA** was the company's incorporator, president, and only director.

3. At all times relevant to this Indictment, ATRC's place of business was 419 Blairfield Court, Severn, Maryland, which was also the residence of **JHA**.

4. At all times relevant to this Indictment, Corporation KMI ("KMI") was a company incorporated in the State of Maryland. The company's place of business was in Odenton, Maryland, until on or about September 2008. Thereafter, its place of business was in Hanover, Maryland.

5.  At all times relevant to this Indictment, the National Science Foundation ("NSF") was an agency of the United States. One mission of the NSF is to fund research and education in the fields of science and engineering in order to stimulate technological innovation by strengthening the role of small business concerns in meeting federal research and development needs. The NSF receives and processes research proposals, and approves some of those proposals for funding awards.

a.  The Small Business Technology Transfer Program ("STTR") is an NSF program through which the NSF grants funding awards to "small business concerns" ("SBC") who collaborate with larger research institutions. Among other requirements, the STTR program requires that the individual serving as the primary investigator/project director ("PI") on the proposed STTR project be primarily employed with the business receiving the STTR award. STTR awards are divided into three phases:

(1)  Phase I is a feasibility study to determine the suitability of research regarding a particular topic, and to determine whether the research project has sufficient technical merit for proceeding to Phase II. Phase I applicants, if approved, receive an award of up to $150,000 for projects spanning twelve months. Two-thirds of this award is provided to the grantee at the beginning of the project term and one-third is provided upon receipt and approval of a final project report at the end of the project term.

(2)  Phase IB represents a supplemental funding opportunity intended to bridge the gap in time and financial resources between the Phase I and Phase II projects. To be eligible, the grantee must obtain third-party funding ranging from a minimum of $40,000 to a maximum of $100,000, for which NSF will provide a 50% match in funding. The maximum NSF

2

Phase IB supplement is $50,000, which is added as a supplement to the initial Phase I award that extends the Phase I award period by up to six months.

(3) Phase II consists of expansion and development of the technology under study in Phase I, typically lasts about two years, and is generally funded by the NSF in an amount of approximately $500,000. The SBC must have completed a successful Phase I project to receive a Phase II award.

b. Awards granted under the STTR program contain the following eligibility requirements set forth in the applicable NSF Program Solicitation 07-551: (1) the primary employment of the Principal Investigator (PI) on an STTR award must be with the SBC at the time of the award; (2) a PI must spend a minimum of two calendar months on an STTR Phase I project; and (3) a minimum of 40% of the research, as measured by the budget, must be performed by the SBC, and a minimum of 30% of the research, as measured by the budget, must be performed by a Collaborating Research Institution ("CRI"). The PI is the individual responsible for the day-to-day oversight and operation of the STTR award.

c. Employment releases and certifications of intent regarding primary employment are required prior to the award. The NSF requires Phase I STTR grantees to attend mandatory in-person training regarding compliance with STTR eligibility requirements. Such training includes notice to the grantees that "primary employment" requires the PI to be employed with the SBC at the time of the award and not employed full time elsewhere.

6. At all times relevant to this Indictment, **JHA** applied on behalf of ATRC to the NSF STTR program for award funding for a project entitled *A MultiObjective Bilevel Approach to Highway Alignment Opitmization* (the "Highway Project"). The purpose of the Highway Project was to enhance

3

current models used by highway planners in order to optimize horizontal and vertical highway routes and, ultimately, to commercialize the result. **JHA** listed himself as the PI for each phase of the project and the University of Maryland as the CRI.

7. At all times relevant to this Indictment, the NSF Office of Inspector General ("OIG") was an independent entity within the NSF that is authorized by the Inspector General Act of 1978 to investigate allegations of fraud, waste and abuse by persons and companies doing business with or receiving benefits from the NSF.

8. At all times relevant to this Indictment, payments of NSF STTR awards were electronically transferred through the U.S. Department of Treasury's financial management system in Kansas City, Missouri, processed through the Federal Reserve branch in Richmond, Virginia, and then wired to the grantee's banking institution.

9. At all times relevant to this Indictment, ATRC's bank account ***7226 was maintained at M & T Bank (formerly with Provident Bank of Maryland), 25 S. Charles Street, Baltimore, Maryland, 21201 ("ATRC's account").

10. At all times relevant to this Indictment, KMI maintained bank account **** **** 1563 at Bank of America in Tampa, Florida ("KMI's account").

11. At all times relevant to this Indictment, **JHA** used email address mkjha8@gmail.com.

12. At all times relevant to this Indictment, NSF used a web-based application system called the FastLane System to receive and manage proposals for STTR Phase I, IB and II funding ("FastLane"). FastLane is housed at a data center in Arlington, Virginia.

### The Scheme and Artifice to Defraud

13. From in or about June 2007 until in or about July 2011, in the State and District of Maryland and elsewhere, **JHA** did knowingly devise and intend to devise a scheme and artifice to

defraud and to obtain money from the NSF STTR program by means of material false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice to defraud and attempting to do so did cause to be transmitted, by means of wire communications in interstate commerce, certain writings, signs and signals (the "scheme to defraud").

## The Objects of the Scheme to Defraud

14. The objects of the scheme and artifice to defraud were to make material, false and fraudulent representations to the NSF concerning the Highway Project and the intended and actual use of NSF award funds related to the Highway Project, in order that (a) NSF would approve the Highway Project and grant award funds to ATRC; (b) **JHA** would convert NSF award funds to his own personal use; and (c) NSF would not discover **JHA**'s improper use of award funds.

## Manner and Means of the Scheme to Defraud

15. It was a part of the scheme to defraud that **JHA** misrepresented his ability to act as PI for the Highway Project by certifying that he was primarily employed by ATRC when, in truth and fact, he was simultaneously employed on a full-time basis by Morgan State University.

16. It was a further part of the scheme to defraud that **JHA** misrepresented the receipt of equity funding from third-party investors in order to obtain matching funds from the NSF STTR program.

17. It was a further part of the scheme to defraud that **JHA** misrepresented his intended use of the funds awarded to ATRC by providing project budgets and other project descriptions to NSF that concealed his true intention to convert some of those funds to his own personal use.

18. It was a further part of the scheme to defraud that **JHA** misrepresented the extent to which the University of Maryland participated in the Highway Project as the CBI.

## Acts in Furtherance of the Scheme to Defraud

### STTR Phase I Funding

19. On or about June 13, 2007, **JHA** submitted to NSF via FastLane a Phase I Proposal for STTR funding on behalf of ATRC listing himself as the PI and the University of Maryland as the CRI. The Proposal sought $150,000 and set forth details about Phase I of the Highway Project, which was to take place between January 1, 2008 and December 31, 2008. To qualify for the funding, **JHA** certified that "[t]he primary employment of the principal investigator will be with this firm at the time of the award and during the conduct of the research." **JHA** also represented that he would secure "release time" or negotiate with Morgan State University for other "leave options (such as sabbatical leave)" in order to spend time at ATRC working on the Highway Project. However, **JHA** maintained his full time employment at Morgan State University and never sought such a release nor any other type of leave during Phase I of the Highway Project. Also in the Phase I Proposal, **JHA** falsely represented that, at the time of the submission of the Proposal, ATRC had eight employees and another Morgan State University professor, G.R., would be working for ATRC as a Senior Scientific Advisor in Marketing. On November 7, 2007, in reliance on the representations made in the Phase I Proposal, NSF funded $150,000 for the Highway Project.

20. On or about December 13, 2007, **JHA** faxed a document from his residence to NSF entitled *NSF SBIR Award: Request for Initial Payment* in which he requested the Phase I initial payment of $100,000. The payment request included a certification by **JHA** that his primary employment as the principal investigator would be with ATRC at the time of the award and continue during the conduct of the research.

21. On or about January 4, 2008, **JHA** caused $100,000 of the Phase I award to be electronically transferred from NSF to ATRC's account.

22. On or about January 26, 2009, after electronically submitting to NSF a Final Report on Phase I, **JHA** caused the balance of the Phase I award, $50,000, to be electronically transferred from NSF to ATRC's account.

### STTR Phase IB Funding

23. On or about October 16, 2008, prior to the conclusion of Phase I of the Highway Project, **JHA** submitted to NSF via FastLane a Phase IB Proposal for STTR funding on behalf of ATRC, again listing himself as the PI. The Phase IB Proposal sought $50,000, set forth supplemental details about the Highway Project, and requested an additional six months to conduct further research, until June 30, 2009. In the Proposal, **JHA** again certified that "[t]he primary employment of the principal investigator will be with this firm at the time of the award and during the conduct of the research." However, **JHA** maintained his full time employment at Morgan State University and never sought a release nor any other type of leave during Phase IB of the Highway Project. As mandated by the STTR Phase IB solicitation, **JHA** provided information in the Proposal about a third party's investment of $100,000 in ATRC, which was the amount needed to obtain the $50,000 in matching funds from NSF. Specifically, **JHA** attached a letter dated October 13, 2008, from M.G., the president of KMI, stating that KMI was willing to invest $100,000 in ATRC's Highway Project. In truth and fact, **JHA** knew that KMI did not have $100,000 to invest in ATRC.

24. On or about December 1, 2008, in response to an email from an NSF Program Officer seeking confirmation that KMI's $100,000 investment would be deposited in ATRC's bank account, **JHA** sent an email from his home computer to NSF with two KMI checks attached, one for $75,000 (dated 11/30/08) and the other for $25,000 (11/26/08), stating that the checks "were paid to Amar Transportation by [KMI]." In another email sent from his home computer that same day, **JHA** stated "I confirm that these checks will be deposited into our account in a few days and these are not a loan

but a true equity investment totaling $100,000." In fact, **JHA** knew that KMI did not have the funds to cover the checks and **JHA** neither deposited the checks into ATRC's bank account nor cashed them.

25. On or about January 15, 2009, after being advised by an NSF Program Officer that the Phase IB Proposal had to include a CRI with a corresponding budget, **JHA** submitted a revised Phase IB budget reflecting a $20,000 subaward to the University of Maryland as the CRI. However, **JHA** never told the University of Maryland about the submission, and after NSF awarded the Phase IB Proposal in the full amount of $50,000 on January 28, 2009, which included the amount budgeted for the University of Maryland, **JHA** never gave the $20,000 subaward to the University of Maryland.

26. On or about January 15, 2009, after electronically submitting a Phase IB Report Cover Page to NSF, **JHA** caused the $50,000 Phase IB award to be electronically transferred from NSF to ATRC's account.

### Submission of Proposal for STTR Phase II Funding

27. On or about January 31, 2009, **JHA** submitted to NSF via FastLane a Phase II Proposal for STTR funding on behalf of ATRC listing himself as the PI and the University of Maryland as the CRI. The Proposal sought $500,000 for the Highway Project and requested twenty-four months to conduct additional research. To qualify for the funding, **JHA** certified that "[t]he primary employment of the principal investigator will be with this firm at the time of the award and during the conduct of the research." Also in the Phase II Proposal, **JHA** falsely represented that another Morgan State University professor, G. R., would be working for ATRC as a Marketing Team Leader.

28. Attached to the Phase II Proposal was a letter from M.G., the president of KMI, which falsely stated that KMI had "invested $100,000 already" in ATRC's Highway Project. In addition, **JHA** also submitted a Commercialization Plan with the Phase II Proposal, in which he falsely stated

that the "first stage investment of $100,000 has been provided by [KMI], a Maryland-based business . . . ."

29. On or about May 13, 2009, **JHA** deposited a check from KMI (dated 5/3/09) made payable to ATRC in the amount of $25,000 into ATRC's account in order to create the false appearance that KMI had invested money in the Highway Project. **JHA** used $25,000 of his own funds from his personal bank account to purchase a cashier's check in that amount, which he then gave to one of the owners of KMI who, in turn, deposited it into KMI's account before KMI's $25,000 check to ATRC cleared the bank.

30. On or about July 9, 2009, **JHA** mailed a letter to NSF auditors in which he falsely stated, "Please note that we received an external investment in the amount of $100,000 this year from [KMI]. With that investment we hope to balance the company [sic] negative balance and liability."

31. On or about October 2, 2009, in a letter appealing NSF's denial of ATRC's Phase II Proposal for funding, **JHA** falsely stated, "[KMI] has made an investment in the amount of $100,000 in our firm. $25,000 of this amount has been deposited in our company's checking account . . . and the remaining balance of $75,000 has been deposited in a separate account."

### STTR Phase I and Phase IB Expenditures

32. On or about January 9, 2008, on the same day as the electronic transfer of NSF Phase I funds into ATRC's account, **JHA** made an electronic payment of $5,420 to pay down the balance on a personal credit card.

33. On or about January 16, 2008, **JHA** wrote a $20,000 check from ATRC's account to Wells Fargo Home Mortgage to pay down the principal on his home mortgage.

34. On or about February 23, 2008, **JHA** wrote a $6,000 check to himself from ATRC's account.

35. Between April 29, 2008 and September 25, 2008, **JHA** authorized approximately $11,000 in salary payments to his wife who did not perform NSF-related work.

36. On or about October 24, 2011, the University of Maryland returned to ATRC approximately $12,000 in unused NSF funds that had been awarded to them as the CRI for Phase I. **JHA** spent those funds to pay down personal lines of credit and other personal expenses.

## The Charges

37. On or about the dates listed below, in the State and District of Maryland and elsewhere, the defendant,

**MANOJ KUMAR JHA,**

for the purpose of executing the scheme and artifice to defraud and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce writings, signs and signals, to wit, the documents identified below, which contained material misrepresentations regarding ATRC's application to the NSF STTR program for award funding for the Highway Project.

| COUNT | DATE | DOCUMENT |
|---|---|---|
| 1 | June 13, 2007 | Phase I Proposal falsely stating that ATRC had eight employees; another Morgan State professor, G.R., would be working for ATRC as a Senior Scientific Advisor in Marketing; and the defendant would be primarily employed at ATRC at the time of the award and during the conduct of research. |
| 2 | October 16, 2008 | Phase IB Proposal falsely stating that KMI was willing to invest $100,000 in ATRC's Highway Project and the defendant would be primarily employed at ATRC at the time of the award and during the conduct of research. |
| 3 | December 1, 2008 | Email to NSF at 12:53 p.m. falsely stating that two checks attached to the email totaling $100,000 had been paid by KMI to ATRC. |

| | | |
|---|---|---|
| 4 | December 1, 2008 | Email to NSF at 1:18 p.m. falsely stating that two KMI checks totaling $100,000 represented a true equity investment in ATRC and the checks would be deposited into ATRC's account in a few days. |
| 5 | January 31, 2009 | Phase II Proposal falsely stating that another Morgan State professor, G.R., would be working for ATRC as a Marketing Team Leader; the defendant would be primarily employed at ATRC at the time of the award and during the conduct of research; and KMI had already invested $100,000 in ATRC. |

18 U.S.C. §1343
18 U.S.C. § 2

## COUNT SIX

(Mail Fraud)

And the Grand Jury for the District of Maryland further charges:

1. The allegations contained in Paragraph 1 through Paragraph 36 of Count One are realleged and incorporated by reference as though fully set forth in this Count.

2. On or about October 5, 2009, in the District of Maryland, the defendant,

**MANOJ KUMAR JHA,**

for the purpose of executing the scheme and artifice to defraud and attempting to do so, did knowingly place in a post office certain mail matter to be sent and delivered by the United States Postal Service, to wit, a Letter of Appeal dated October 2, 2009, which contained a material misrepresentation regarding ATRC's application to the NSF STTR program for award funding, that is, the defendant falsely stated that KMI had invested $100,000 in ATRC by issuing two checks, one of which was deposited into ATRC's bank account, and the other one in a different bank account.

18 U.S.C. § 1341
18 U.S.C. § 2

## **COUNT SEVEN**

(Falsification of Records)

And the Grand Jury for the District of Maryland further charges:

1. The allegations contained in Paragraph 1 through Paragraph 36 of Count One are realleged and incorporated by reference as though fully set forth in this Count.

2. On or about February 15, 2011, an investigator with the Office of Inspector General ("OIG") for the NSF sent **JHA** a letter stating that the OIG was conducting a proactive investigative review to assess ATRC's compliance with laws, regulations and grant conditions regarding the STTR Phase I award for the Highway Project. The letter requested copies of various documents, including (a) a list of all individuals who worked on the project and their time sheets, and (b) the company's expenditure ledger detailing all budget categories.

3. On or about March 11, 2011, **JHA** responded, through his attorney, to OIG's investigative review by providing, among other things, biweekly, signed time sheets purportedly maintained by **JHA** for M.W.K., a research scientist who worked on the Highway Project from October 1, 2008 until September 8, 2009. **JHA** also provided a copy of ATRC's *Expenditure Ledger* as of September 10, 2009.

### **The Charge**

4. On or about March 11, 2011, in the State and District of Maryland and elsewhere, the defendant,

### **MANOJ KUMAR JHA,**

did knowingly falsify and make a false entry in the documents and records listed below with the intent to impede, obstruct, and influence the investigation and proper administration of the funding awarded

13

to ATRC for the Highway Project under Phase I and Phase IB of NSF STTR program, a matter within the jurisdiction of the National Science Foundation, a department and agency of the United States.

| DOCUMENT | FALSIFICATION |
|---|---|
| Biweekly times sheets for M.W.K. for the period of October 1, 2008 until September 8, 2009 | The time sheets were created by the defendant only after receiving the OIG letter of February 15, 2011, and in such a way as to give the false appearance that the time sheets had been maintained and signed contemporaneously with M.W.K.'s work on the Highway Project. |
| ATRC's *Expenditure Ledger* as of September 10, 2009 | The defendant entered fictitious research expenses in the ledger in order to conceal the fact that NSF funds had been expended on personal expenses, which were not listed in the ledger. |

18 U.S.C. § 1519
18 U.S.C. § 2

## FORFEITURE

The United States Attorney for the District of Maryland further charges that:

1. Pursuant to 18 U.S.C. Section 981(a)(1)(C) and 28 U.S.C. Section 2461(c), upon conviction of an offense in violation of 18 U.S.C. §§ 1341 and 1343 as alleged in Counts One through Six, the defendant shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds traceable to the scheme to defraud.

2. The property to be forfeited includes, but is not limited to, the following:

   a. A sum of money equal to the value of the proceeds of the scheme to defraud, which amount is at least $200,000.

3. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 1956(c)(7); 18 U.S.C. § 1961(1); 28 U.S.C. § 2461(c); Rule 32.2(a), F.R.Crim.P.

_____
Rod J. Rosenstein
United States Attorney for the
District of Maryland

A TRUE BILL:

**SIGNATURE REDACTED**            11·14·2012
_____    _____
Foreperson                          Date